PARIENTE, J.,
concurring.
I agree that Robards is entitled to Hurst relief and should, therefore, receive a new penalty phase. I write to emphasize the woeful inadequacy of Robards’ penalty phase counsel who failed to present the jury with evidence of substantial mental health mitigation, which reinforces the necessity for a new penalty phase in this case. As I explained in my concurring opinion in Robards’ direct appeal, “the record before this Court raise[d] questions about” whether Robards’ penalty phase counsel was ineffective in presenting mental health mitigation, but “further factual development [was] necessary in order for this claim to be fairly and properly adjudicated.” Robards, 112 So.3d at 1274 (Pariente, J., concurring). The postconviction proceedings below have now revealed the breadth of mitigation evidence that penalty phase counsel failed to reasonably investigate. Consequently, the jury in Robards’ case—-which recommended his two death sentences by narrow votes of seven to five—was not presented with the full pic *577 ture of Robards’ life when it made its recommendations. See id. at 1263.
What we now know as a result of the postconviction proceedings is that at the time Robards’ penalty phase began, penalty phase counsel had access to Robards’ medical and psychiatric records, competency records, and the results of an initial Positron Emission Tomography (PET) scan showing brain abnormalities. Additionally, penalty phase counsel was aware of records regarding motorcycle accidents in which Robards had sustained injuries. Penalty phase counsel also knew from the appointed mitigation specialist that there was evidence Robards suffered sexual and physical abuse during his childhood. Despite this knowledge of substantial mitigation, penalty phase counsel did not further investigate Robards’ background and proceeded to the penalty phase.
Penalty phase counsel acknowledged in his testimony during the evidentiary hearing that the full extent of mental health mitigation was not known until “months after” the penalty phase jury recommended that Robards be sentenced to death. In this regard, penalty phase counsel did not have a full picture of Robards’ background before he decided against presenting mental health mitigation to the penalty phase jury. Consequently, the penalty phase jury was similarly denied the full picture of the mitigating circumstances in Robards’ life that may have affected its weighing of the aggravation and mitigation when deciding whether Robards was deserving of the ultimate punishment.
Instead, the mental health mitigation was developed during three hearings held before the trial judge over a period of months after the penalty phase jury made its recommendations. The investigation of Robards’ mental health mitigation during these months revealed that Robards suffered from traumatic brain injury and toxic brain exposure. Moreover, testimony by a PET specialist revealed that Robards began using steroids at age fifteen and used them continuously for decades. A psychopharmacologist testified that Ro-bards may have been suffering from steroid withdrawal during the time of the murders, and evidence was presented demonstrating Robards’ paranoia, violent behavior, delusions, and psychotic disturbances. Robards’ sister’s testimony during one of the hearings also revealed that Ro-bards’ brothers physically and emotionally tormented him growing up, and that Ro-bards was sexually abused in a neighbor’s home as a child.
Thus, as penalty phase counsel acknowledged during the postconviction proceedings, the picture of Robards’ childhood that the penalty phase jury was presented with was incomplete. The penalty phase jury was not afforded the opportunity to evaluate this testimony against other testimony that depicted Robards as a happy child. “The jury vote in this case was seven to five in favor of a death recommendation. The swaying of the vote of only one juror would have made a critical difference here.” Phillips v. State, 608 So.2d 778, 783 (Fla. 1992). For all these reasons, it is clear that a new penalty phase is mandated not only on the basis of the harmful Hurst error in this case, but also as a result of the ineffective assistance of Ro-bards’ penalty phase counsel.